COMPLAINT

CORRECTED REDACTED COPY

CASE NO. 26-cv-00911-SVK

FILED

FEB 03 2026

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

JOHN DOE
*Pro Se* Litigant
[redacted]

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA**

--------------------------------X

| | | |
|---|---|---|
| JOHN DOE, | : | CASE NO. 26-cv-00911-SVK |
| Plaintiff, | : | |
| v. | : | **CORRECTED COMPLAINT** |
| MATTHEW PAGE, DOE 1–20, | : | |
| Defendants. | : | JURY TRIAL DEMANDED |

--------------------------------X

JOHN DOE (referred to as "Plaintiff" hereof), is represented by himself (*pro se*), for JOHN DOE'S Complaint against MATTHEW PAGE and DOE 1–20 (referred to as "Defendants" hereof), alleges, on knowledge as to MATTHEW PAGE's and DOE 1–20's actions, and otherwise upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. This is an action for the infringement of Plaintiff's 4th and 14th Amendment constitutional rights under the United States Constitution, and infringement of Plaintiff's Article

1 Section 1, 7, 13, and 31 constitutional rights under the California State Constitution under the state and common laws of California, during a police investigation by the Defendants identified in this Complaint as DOE 2–20. DOE 2–20 may be unknown named agents of the following California police departments: Palo Alto, California, and Menlo Park, California. DOE 2–20 may not be employees of the aforementioned local police departments, which is discussed further in Paragraphs 12–15 hereof, as if fully set forth herein. The combination of all of the constitutional rights infringements listed in Paragraph 1 hereof, are egregious, and they shock the conscience, which constitute substantiative infringements of Plaintiff's constitutional rights. Plaintiff is seeking redress against all of the Defendants, irrespective of where they are employed Plaintiff is seeking relief under the legal precedent established by 42 U.S.C. § 1983, the United States Constitution, and the California State Constitution under the state and common laws of California, under the condition that some of the unnamed police agents DOE 2–20 are employees of the Palo Alto, California, and Menlo Park, California police departments.

2. This is an action for the infringement of Plaintiff's 4th and 5th Amendment constitutional rights of the United States Constitution, and infringement of Plaintiff's constitutional rights under Article 1 Section 13 and Article 1 Section 15 of the California State Constitution under the state and common laws of California by the Defendants identified in this Complaint as MATTHEW PAGE and DOE 1. Plaintiff is seeking relief under the legal precedent established by 42 U.S.C. § 1983, the United States Constitution, and the California State Constitution under the state and common laws of California.

3. This is an action for the infringement of Plaintiff's rights to not be subjected to intentional or negligent infliction of emotional distress by the Defendants identified in this

Complaint as MATTHEW PAGE and DOE 1–20. Plaintiff is seeking redress against all of the Defendants, irrespective of where they are employed. Plaintiff is seeking relief under the common laws of California that establish intentional infliction of emotional distress and negligent infliction of emotional distress as tortious acts.

4. Paragraphs 110–115 hereof, as if fully set forth herein, describe legal doctrines that Plaintiff is asserting regarding the statute of limitations defenses.

5. Plaintiff requests a total of $ 30,876,457.90 in monetary damages as of the date of this filing. This amount is subject to change due to ongoing medical diagnoses, future fees, future costs, and interest.

## JURISDICTION

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the precedent established by 42 U.S.C. § 1983 and the Constitution of the United States. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1367, in that it arises under the California State Constitution, and intentional and negligent infliction of emotional distress under the common laws of California.

## DIVISIONAL VENUE

7. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district. Most of the events described hereof occurred in Menlo Park, San Mateo County, California, and Palo Alto, Santa Clara County, California. Plaintiff thinks that the most convenient location is the San Jose, California, courthouse.

## PARTIES

8. JOHN DOE is an individual who resides in [redacted]. Plaintiff is a citizen of the United States of America.

9. MATTHEW PAGE is an individual who resides in an unknown location in the United States of America, in the state of California, in or around Palo Alto, California, and Menlo Park, California. MATTHEW PAGE was employed by the Menlo Park, California, Police Department at the time of the alleged events. MATTHEW PAGE is a citizen of the United States of America.

10. DOE 1 is an individual who resides in an unknown location in the United States of America, in the state of California, in or around Palo Alto, California, and Menlo Park, California. DOE 1 is a female police officer who directly worked with Officer Matthew Page at the time of the alleged events. DOE 1 is a citizen of the United States of America.

11. DOE 2–20 are individuals who reside in unknown locations in the United States of America, presumably in the state of California, in or around Palo Alto, California, and Menlo Park, California. DOE 2–20 are citizens of the United States of America.

## FACTS

12. **Identities of the Defendants**: The true names and identities of the Defendants are unknown to Plaintiff, who therefore sues the Defendants under such fictitious names (Bivens V. six unknown named agents of the Federal Bureau of Narcotics). Plaintiff will amend his complaint when the true identities of the Defendants are discovered. Plaintiff believes, and therefore alleges, that each fictitiously named DOE is responsible in some manner for the occurrences hereinafter alleged, and that Plaintiff's injuries and other damages as hereinafter set

forth were legally caused by the actions of the Defendants in some manner. Because the roles and the extent of culpability of the individual DOE 2–20 Defendants are unknown at this time, except for MATTHEW PAGE and DOE 1, DOE 2–20 are listed under each count hereinafter to preserve Plaintiff's rights to legal recourse.

13. Usage of DOE 2–20 is not intended to mean every Defendant, but DOE 2–20 is intended to be a placeholder to indicate all of the Defendants who are culpable. The complaint will be amended to reflect the true identities and roles of the Defendants when the time is appropriate. Twenty DOE defendants were listed as the Defendants as an estimate of the true number of people who may bear responsibilities in the matters hereof, to the extent that is not known as of the date of this Complaint.

14. Plaintiff is not sure where all of the Defendants are employed. Plaintiff suspects that the Defendants work for a combination of federal agencies (the Federal Bureau of Investigation and maybe other federal agencies), California sheriff departments (Santa Clara County and San Mateo County), and local police departments (Palo Alto, California and Menlo Park, California) because the surveillance happened in multiple states, the investigation has been long, complex and costly, and the investigation began with Plaintiff being questioned by undercover police agents during [redacted]. The Defendants did not at any time during the events described hereof disclose their identities, officially acknowledge their investigation, or make any official statement to Plaintiff. Plaintiff thinks he could photographically identify some of the Defendants.

15. **Parallel causes for action**: Plaintiff is asserting causes for action against the Defendants that depend on how the Defendants are involved in the investigation and that depend on which agencies the Defendants work for, because different laws apply to the different classifications of law enforcement officials. On 1/22/2026, Plaintiff mailed an administrative complaint to the Department of Justice regarding the Federal Bureau of Investigation to assert causes for action under the Federal Tort Claims Act, against employees of the Federal Bureau of Investigation, other unidentified federal agencies, or for officials acting in a federal capacity, who may be DOE Defendants described hereof. On 1/29/2026, Plaintiff initiated administrative complaints with the Santa Clara County Sheriff's Department and the San Mateo County Sheriff's Department to assert causes for action under the state and common laws of California under supplemental jurisdiction . Plaintiff is requesting that the court approve a motion to consolidate the causes for action therein the administrative complaints, once the administrative complaint processes are complete and under the condition that an out of court settlement is not reached between Plaintiff and any or all of the Defendants, because of the rules of joinder and consolidation as defined in the Federal Rules of Civil Procedure 19 and 42(a).

16. **Incident with MATTHEW PAGE and DOE 1**: In February 2024, MATTHEW PAGE and DOE 1 entered Plaintiff's apartment without Plaintiff's consent. No one was in the apartment besides Plaintiff, at the time of entry, who could have let the officers in voluntarily. Plaintiff asked the police officers to furnish a signed warrant that allowed them to enter the apartment. MATTHEW PAGE said that they did not need a signed warrant to enter his apartment. MATTHEW PAGE began questioning Plaintiff. Plaintiff clearly answered a question with the phrase "5th Amendment." MATTHEW PAGE continued to question Plaintiff and accused Plaintiff's response of "Fifth Amendment" as being disconcerting. The events were

probably recorded by the officers' body cams. In addition, Plaintiff's apartment was wired with covert audio and video monitoring devices that were installed by other Defendants.

17. **Public records requests**: Plaintiff requested records about himself under the California Public Records Act (Government Code 7923.000 *et seq.*) and the Freedom of Information Act (FOIA, 5 U.S.C. § 552). The [redacted] was the only agency to provide an answer responsive to Plaintiff's requests. Plaintiff believes that the agencies are using the various law enforcement exceptions to disclosure even though Plaintiff definitely knows of the investigation's existence. Plaintiff's public records request through [redacted] stated that Plaintiff was accused of [redacted] **(Exhibit A)**, which Plaintiff could not have committed because Plaintiff was [redacted] **(Exhibit B)**. Plaintiff has patently no predisposition to commit [redacted]. Therefore, [redacted] is evidence of confirmation bias by the Defendants. Plaintiff appealed the Federal Bureau of Investigation's FOIA response that there are no records pursuant to Plaintiff's request [redacted], the Department of Justice has not responded to Plaintiff's appeal, which is an infringement of the statutory limitation for a response as outlined in 5 U.S.C. § 552(a)(6)(A)(ii): a response no later than 20 business days is stated, and to date it has been 25 business days since the initiation of the appeal with no response from the agency [redacted]

18. **Timeline of events**: Plaintiff's suspicion that he was the subject of an undercover police surveillance operation began after an alleged undercover police agent showed Plaintiff a

photograph of Plaintiff on their phone during a meeting in a foreign city while Plaintiff was on vacation.

19. The surveillance operation followed Plaintiff after he returned from vacation to [redacted]. The Defendants began investigating Plaintiff at his workplace. The Defendants also increased their investigation of Plaintiff in public places and in traffic.

20. [redacted]

21. After Plaintiff was retaliated against in September 2023, Plaintiff was granted disability leave. Around this time, the Defendants began communicating with Plaintiff. Plaintiff was coerced into participating in the Defendants' investigation beginning in October 2023. In February 2024, Plaintiff realized his most serious personal injury as he developed psychosis. The psychosis was caused by the direct actions of the Defendants.

22. **Circumstantial evidence that corroborates the existence of police surveillance**: A substantial amount of circumstantial evidence was collected to corroborate Plaintiff's allegations as described in Paragraphs 1–5 hereof, as if fully set forth herein. The combination of all the pieces of circumstantial evidence supports the causes for action:

23. **Electronic circumstantial evidence**: The Defendants directly communicated with Plaintiff over a long period of time using hacked phone and computer software, and using

various other means and devices, to relay messages. Plaintiff documented circumstantial evidence of the surveillance software and some of the messages the Defendants relayed to Plaintiff through the software. The most easily observable form of communication used by the Defendants is a code language taught to Plaintiff through the hacked electronic devices and by other means: 2, 4, or 8 = no/incrimination, and 3 or 6 = yes/no incrimination (**Exhibit C**). Plaintiff documented the Defendants' manipulation of search results to display trigger words, images, and videos, which are designed to elicit psychological responses (**Exhibit D**). In addition, the Defendants would manipulate computer programs to display text dialog boxes in places that they are not programmed to display, in addition to other manipulations of common programs to illicit psychological responses (**Exhibit D**). Plaintiff documented circumstantial evidence that the Defendants' computer software was preventing him from being able to view job postings (**Exhibit E**).

24. **A computer forensic company's analysis**: The Defendants' computer software concealed Plaintiff's evidence by preventing him from accessing it using his personal computer. Therefore, Plaintiff provided his hard drive to a computer forensics company, which contains two backups of his computer. The company uncovered that *ca.* 20,000 files were deleted from Plaintiff's hard drive into a hidden recycle bin on the hard drive on 12/04/2023 at 3:23 pm (**Exhibit F**). Plaintiff did not delete the files on his hard drive into the hidden recycle bin located on the hard drive. Files that were deleted could have plausibly been used to hijack Plaintiff's computer; there is no other obvious reason for the Defendants to conceal random operating system files that are evidence. Concealment of evidence is circumstantial evidence of consciousness of guilt.

25. Plaintiff made a screen recording, using the command+shift+5 function via his Apple laptop, of an attempt to access his backed-up data that was stored on the hard drive that was analyzed by the computer forensics company. in 2025–2026, on 4/27/2024. When Plaintiff attempted to access the data, the alleged police software prevented access to the stored files, and when the computer forensics company used a separate computer to access the files, the files were not hidden because the Defendants' software may not have been installed the computer forensics company's computers (**Exhibit G**).

26. Plaintiff documented evidence that the Defendants prevented him from viewing active job postings beginning in October 2023 through June 2024 (**Exhibit E**). Job postings from large multinational corporations posted frequently were hidden from Plaintiff. Job postings for which Plaintiff believed he was qualified at the time were hidden from Plaintiff; job postings for which Plaintiff believed he was not qualified were not hidden from Plaintiff. The effects of the computer software were evidenced by screenshots of Plaintiff's job search results and comparison to Plaintiff's job search results after the software was modified to stop preventing Plaintiff from viewing certain job postings (**Exhibit E**).

27. **Non-electronic circumstantial evidence**: Plaintiff purchased a JMDHKK hidden camera, listening device, and GPS detector. The JMDHKK detector indicates that the Defendants installed a monitoring device in or attached to his car due to strong JMDHKK signals being emitted from Plaintiff's car when it is off (**Exhibit H**). The circumstantial evidence of the Defendants' monitoring device is substantiated by circumstantial evidence of the Defendants following Plaintiff around in unmarked police vehicles and police agents on foot, as evidenced by Plaintiff's dashcam recordings (**Exhibit I**). The unmarked vehicles are the same makes,

models, years, and colors of vehicles that Plaintiff recognizes as owned by people he knows, and makes, models, years, and colors of cars owned by people Plaintiff does not recognize (**Exhibit J**). The frequency of the undercover police vehicles that appeared via Plaintiff's dashcam recordings results in mathematical probabilities that are statistically impossible for the events to be random occurrences. In other words, the mathematical analysis of the frequency of undercover police vehicles relative to randomness ***conclusively*** proves the presence of the Defendants' investigation.

28. Plaintiff also has evidence that there are JMDHKK signals coming from objects and areas where he has resided that usually do not emit JMDHKK signals, such as beds, walls, and common areas (**Exhibit K**). The JMDHKK signals constitute circumstantial evidence of covertly installed monitoring devices by the Defendants.

29. [redacted]

30. Pl[redacted]

31. [redacted]

32. When Plaintiff would go in public, Plaintiff would be exposed to people who were exhibiting body language signs indicative of trauma; these people would use the same hand signals, described in Paragraph 29 hereof, to indicate only no responses. Plaintiff was exposed to people like this a countless number of times (estimated to be more than 25 occurrences if Plaintiff's memory is correct). The traumatized people would signal no when they looked at Plaintiff. Four elements are certain: the events described in this Paragraph hereof were not random occurrences, they involved people looking at Plaintiff, they involved the no signal, and all of the people were traumatized. The fact that none of the trauma victims identified Plaintiff with a yes signal is circumstantial evidence of the Defendants' confirmation bias.

33. Plaintiff suffered serious and prolonged psychological injuries, financial harm, reputational loss, and humiliation because of what happened in April through September 2023, which would not have happened if it were not for the actions of the Defendants. Plaintiff was diagnosed with anxiety due to being sexually harassed and due to what happened immediately

after filing the sexual harassment complaint. Plaintiff was diagnosed with prolonged major depression because of his job loss by a psychiatrist from May 2024 through July 2025.

34. **Details from after the departure from Plaintiff's employer between October 2023 and February 2024**: The Defendants disclosed that Plaintiff's female coworker named FEMALE COLEAGUE 3 was pressured into making an allegation against Plaintiff; the Defendants communicated this fact through one of Plaintiff's hacked electronic devices, and Plaintiff did not make an audio recording of the admission as it was an admission at the spur of the moment. As described in Paragraph 27 hereof, the Defendants repeatedly followed Plaintiff around with the exact car (make, model, and year) owned by FEMALE COLEAGUE 3 from early 2023 onward; this is circumstantial evidence that they are assessing a hypothesis related to FEMALE COLEAGUE 3.

35. The Defendants directly communicated with Plaintiff over a long period of time, using hacked phone and computer software, as well as various other means and devices, to relay messages. The Defendants provided instructions such as what acts would cause Plaintiff to incriminate himself or not incriminate himself because Plaintiff participated in the investigation; the Defendants relayed, using the code language, communications usually by sounds generated from electronic devices, peoples' voices, lights flashing, visual displays of numbers, or car horns honking; the coded signals are 2, 4, or 8 = no/incrimination and 3 or 6 = yes/no incrimination.

36. The Defendants instructed Plaintiff to walk outside past undercover police cars (parked and moving), undercover police agents, and planted objects for usually 6 hours per day. The Defendants would follow Plaintiff around with undercover police vehicles in similar manners to when he would be driving in Plaintiff's car that contained the Defendants' covert tracking device. The Defendants instructed Plaintiff to turn around and walk in the opposite

direction if he was passed by a red vehicle, a yellow vehicle, an orange vehicle, a police vehicle, or an ambulance.

37. One day, the Defendants instructed Plaintiff to pace back and forth, by passing Plaintiff in each direction repeatedly with cars that instructed Plaintiff to reverse his walking direction. This happened outside of an establishment for long enough for security guards to approach Plaintiff. The security guards questioned Plaintiff about loitering and called the local police. This is a clear example of entrapment where the Defendants imagined a crime for Plaintiff to commit in their heads. There is patently no evidence of Plaintiff having a predisposition to commit loitering.

38. The Defendants would also make sounds, play music, and have police agents say things while Plaintiff was walking outside. For example, after Plaintiff stopped taking the anxiety medication gabapentin, Plaintiff went through withdrawal effects induced by the medicine; Plaintiff said via audio recording, "since stopping using the medication gabapentin, I have been feeling very, uh, intense pain in my back," on 12/7/2023 (**Exhibit O**). The Defendants responded by having a police agent drive by and mock Plaintiff by saying "ow, my back hurts" through the open window of the undercover police car as they drove by Plaintiff.

39. The instructions to walk outside were coupled with other instructions using the code language. Plaintiff was instructed not to use a computer, listen to music or audiobooks, read books, talk to anyone, do his laundry, or clean, for example.

40. The Defendants instructed Plaintiff, using the code language, that eating food, drinking water, urinating, defecating, and brushing his teeth would incriminate Plaintiff. Plaintiff stopped consuming food and water in a normal manner in conjunction with prolonged daily exercise, which resulted in Plaintiff losing 2.3 pounds per week as evidenced by his medical

record (**Exhibit M**). The Defendants also instructed Plaintiff that buying food or other items would incriminate himself. In addition, the Defendants would drive by Plaintiff in cars with the same color schemes as food packaging color schemes that Plaintiff purchased, or other color schemes not related to food but items in Plaintiff's apartment, such that Plaintiff would incriminate himself if he ate food or used items with the same color scheme in some manner.

41. The Defendants instructed Plaintiff to engage in other behaviors, such as sitting perfectly upright in a chair for as long as possible; typically, Plaintiff would sit in a chair for about 4 to 6 hours a day. Lying down, standing up, flexing muscles in certain ways, or slouching was communicated to be an incriminatory behavior. While Plaintiff was sitting upright in a chair in his apartment, the Defendants would make sounds and flash lights around Plaintiff in non-uniform patterns for almost the entire time that Plaintiff was awake and in his apartment. The Defendants instructed Plaintiff that any form of negative limbic arousal (body language) would incriminate Plaintiff. In addition, the Defendants instructed Plaintiff not to divert his gaze from looking straight forward. Eventually, the Defendants even instructed Plaintiff that sitting in a chair was not allowed via the code signal for no/incrimination.

42. **Psychological injuries**: Plaintiff has suffered severe reputational harm, permanent occupational harm, his relationships with others were damaged, and he was humiliated. Plaintiff's personal relationships were ruined due to the actions of the Defendants. The Defendants involved all of Plaintiff's coworkers and many of Plaintiff's personal friends. Plaintiff's personal relationships were permanently damaged due to the actions of the Defendants. For example, Plaintiff knows people that he could have obtained a new job from, but he decided not to because the Defendants would probably investigate Plaintiff in his new workplace, which would cause reputational harm to people who are friends with Plaintiff.

43. After Plaintiff was demoted by his employer, Plaintiff was diagnosed by a psychiatrist for the purpose of obtaining disability insurance in October 2023 (**Exhibit M**). The psychiatrist diagnosed Plaintiff with schizophrenia spectrum disorder.

44. Plaintiff discovered that he was seriously injured psychologically with the symptoms of psychosis due to being tortured by the Defendants being realized in February 2024. The extent and causes of Plaintiff's psychosis are discussed in further detail in Paragraphs 66–71 (**Count 7**) hereof, as if fully set forth herein. Plaintiff wrote down a list of symptoms without searching the internet for symptoms related to the psychosis, in addition to Plaintiff's medical records that ascertain his diagnoses (**Exhibit M**). Plaintiff regularly met with a psychiatrist from May 2024 through July 2025, where he discussed some of the symptoms of the torture-induced psychosis. Plaintiff did not discuss all of the symptoms and causes of psychosis because Plaintiff erred on the side of exercising his 5th Amendment rights to not be compelled to be a witness against himself as he was being recorded by the Defendants during the psychiatry meetings. For these reasons, the psychiatric diagnoses are ongoing. Plaintiff's notable non-observable psychotic symptoms are related to the Defendants' actions:

Visual hallucinations with Plaintiff's eyes closed, visualizing unmarked police cars.

Plaintiff hears auditory hallucinations of himself coughing and taking sharp breaths of air (incriminatory body language symptoms), and auditory hallucinations of car horns honking. The voice in Plaintiff's head, which convinced Plaintiff not to comply with the Defendants' orders, convinced Plaintiff that it was the voice of a police officer. The orders that the voice in Plaintiff's head gave Plaintiff were to eat food and drink water, as Plaintiff became so malnourished that he couldn't cope with complying with the

Defendants' orders to refrain from eating food, drinking water, and using the bathroom as described in Paragraphs 60–71 hereof, as if fully set forth herein.

45. Plaintiff's life has been and will be permanently affected because of the actions of the Defendants. Plaintiff will require psychiatric treatment and therapy for the rest of his life due to the severity of the psychological injuries that would not have happened if it were not for the actions of the Defendants. When people are subjected to cruel and traumatic environments, they learn maladaptive behaviors to cope with the environment. The severity of the trauma affects how pervasive the maladaptive behaviors become in the psyche and how long they last. Torture-induced psychosis is an example of an extremely severe form of emotional distress that will require lifelong treatment. The Defendants knew that Plaintiff was a victim of childhood sexual abuse, yet they did not stop their torture tactics (**Exhibit N**); therefore, Plaintiff is predisposed to susceptibility to the Defendants' psychological manipulations because of stress disorders due to the childhood sexual abuse. In addition, childhood trauma predisposes people to develop psychosis under circumstances such as the actions of the Defendants as described in Paragraphs 60–71 hereof, as if fully set forth herein.

46. Development of torture-induced psychosis is caused by epigenetic changes, environmental factors, and psychological factors that lead to lifelong symptoms. Therefore, Plaintiff will need to consult with a psychiatrist for the rest of his life. In addition, the epigenetic changes due to the torture induced psychosis will be passed down to Plaintiff's offspring, which will cause Plaintiff's offspring to inherit disease predispositions due to the direct actions of the Defendants.

47. **A major surgery in 2023**: Plaintiff went through gall bladder removal surgery in August 2023; Plaintiff also discovered other medical injuries as evidenced by his medical record after noticing the symptoms of psychosis in February 2024 (**Exhibit M**):

48. **Post-surgery medical injuries**: Plaintiff estimated his weight loss to be 2.3 pounds per week, as evidenced by his medical record (**Exhibit M**). On 12/13/2023, Plaintiff took a photograph showing his ribs protruding to evidence how skinny he had become (**Exhibit M**). Plaintiff lost an estimated 17 pounds after the photograph; Plaintiff's health was becoming life-threatening, which was evidenced by Plaintiff's blood tests: elevated levels of the alkaline phosphatase, aspartate aminotransferase, and alanine aminotransferase enzymes were observed in Plaintiff's blood in February 2024 (**Exhibit M**); those enzyme assays are indicative of liver damage. People who are classified by doctors as having the medical condition anorexia nervosa commonly have elevated levels of aspartate aminotransferase and alanine aminotransferase enzymes observed upon admission to hospitals (*ca.* 40%). Anorexia nervosa is a disease where people do not eat enough food to sustain themselves, to the point that the disease is life-threatening. Elevated levels of alkaline phosphatase are observed amongst people who have refeeding syndrome, which was also observed in Plaintiff.

49. People who are malnourished are known to suffer from post-surgery medical complications at a higher rate compared to people who are not malnourished. Plaintiff noticed a medical injury shortly after these events transpired, i.e., pain in his abdomen that has persisted to this day. The medical diagnoses are still ongoing. Plaintiff developed skin growth due to psoriasis (**Exhibit O**). It is known that being malnourished exacerbates psoriasis.

## COUNT ONE: 42 U.S.C. § 1983 14th AMENDMENT CLAIM

## As against DOE 2–20

50. **Introduction**: Plaintiff repeats and realleges Paragraphs 1–49 hereof, as if fully set forth herein. This is a cause for action under 42 U.S.C. § 1983 for the infringement of Plaintiff's 14th Amendment constitutional rights to life, liberty, and property without due process of law, under the United States Constitution, by the Defendants. These events began in Menlo Park, California, in October 2023.

51. **Claim 1**: The investigation changed course after Plaintiff was demoted by his employer in September 2023. The Defendants began to communicate purposely with Plaintiff through Plaintiff's hacked computer and cell phone using code language and splicing and interjecting words into videos and audio playing from the electronic devices; the communications included instructions on how to participate in their investigation, which implied that the communications were well thought out, purposeful, and not made due to faulty reasoning. The Defendants coerced and intimidated Plaintiff to not talk to lawyers to obtain legal advice, to not initiate a legal proceeding, or to not use a computer to search for information; the Defendants communicated that serious harms to parties and non-parties would occur while Plaintiff was considering taking legal action. The Defendants did not inform Plaintiff that there are means and procedures to seal and redact legal documents for the purpose of protecting the rights of parties and non-parties to privacy, prevention from harassment, prevention of serious harm, prevention of a public scandal, and prevention of the public from making libelous statements. Plaintiff trusted their communications to his detriment. These events began in October 2023.

## COUNT TWO: 42 U.S.C. § 1983 14th AMENDMENT CLAIM

## As against DOE 2–20

52. **Introduction**: Plaintiff repeats and realleges Paragraphs 1–51 hereof, as if fully set forth herein. This is a cause for action under 42 U.S.C. § 1983 for the infringement of Plaintiff's 14th Amendment constitutional rights to life, liberty, and property without due process of law, under the United States Constitution, by the Defendants. These events began in Menlo Park, California, in October 2023.

53. **Claim 2**: The Defendants promised Plaintiff a legal settlement after Plaintiff followed the Defendants' directions. The Defendants verbally communicated this offer while Plaintiff was walking outside without any electronic device nearby. Plaintiff reasonably relied on the Defendants' words, resulting in loss of Plaintiff's rights to due process; for example, Defendants' actions caused Plaintiff to not timely file an administrative complaint for claims under federal laws such as Title VII of the Civil Rights Act of 1964. The Defendants' actions caused Plaintiff to not timely file an administrative complaint under the California Government Tort Claims Act, under the state and common laws of California.

## COUNT THREE: 42 U.S.C. § 1983 14th AMENDMENT CLAIM

## As against DOE 2–20

54. **Introduction**: Plaintiff repeats and realleges Paragraphs 1–53 hereof, as if fully set forth herein. This is a cause for action under 42 U.S.C. § 1983 for the infringement of Plaintiff's 14th Amendment constitutional rights to life, liberty, and property without due process of law, under the United States Constitution, by the Defendants. These events began in Menlo Park, California, in October 2023 through June 2024.

55. **Claim 3**: The Defendants installed software on Plaintiff's computer that prevented him from applying to jobs after the Defendants' actions contributed to Plaintiff losing his salary as described in Paragraphs 19–21, 29–31, and 33, therefore hindering Plaintiff from being able to afford legal advice or to afford the various costs of litigation. Plaintiff was also not able to freely choose to not to participate in the Defendants' investigation because he couldn't occupy his time by working. The computer software would prevent Plaintiff from viewing active job postings under review by recruiters; only old job postings, which do not typically lead to interviews, were displayed. The computer software prevented Plaintiff from viewing job postings for which he was qualified; the vast majority of job postings he was able to view were either positions for which Plaintiff was under- or over-qualified. In other words, Plaintiff was held against his will. These facts were evidenced by Plaintiff's internet search history, Plaintiff's screenshots, Plaintiff's emails, and evidence of the computer software on Plaintiff's computer. In addition, the Defendants concealed evidence related to this claim, which is circumstantial evidence of consciousness of guilt.

## COUNT FOUR: 42 U.S.C. § 1983 14th AMENDMENT CLAIM

## As against DOE 2–20

56. **Introduction**: Plaintiff repeats and realleges Paragraphs 1–55 hereof, as if fully set forth herein. This is a cause for action under 42 U.S.C. § 1983 for the infringement of Plaintiff's 14th Amendment constitutional rights to not be deprived of life, liberty, and property without due process of law, under the United States Constitution, by the Defendants. This cause for action was first noticed in Washington State in April 2024, but the cause for action is related to the events that transpired in Palo Alto, California, and Menlo Park, California.

57. **Claim 4**: Plaintiff realized that he was not able to access his evidence backups on 4/27/2024 (**Exhibit G**). Plaintiff repeats and realleges Paragraphs 23–26 hereof, as if fully set forth herein. The Defendants' computer software intentionally concealed evidence that Plaintiff gathered, which was stored on his hard drive that was analyzed by the computer forensics company in anticipation of litigation. The concealment of evidence directly interfered with Plaintiff's ability to convince legal counsel to help him. As shown in **Exhibit G**, the computer software prevented Plaintiff from accessing his files. The concealed evidence is relevant to the causes for action in **Count 1**, **Count 3**, **Count 5**, **Counts 7–9**, **Counts 11–20**, and **Counts 25–26**. The concealment of evidence directly interfered with Plaintiff's due process rights because statutes of limitations to timely file an administrative complaint under the California Government Tort Claims Act under the state and common laws of California ran out, for example. Concealment of evidence is circumstantial evidence of consciousness of guilt. Plaintiff has not been able to access his evidence until the hard drive containing the evidence was turned over to Plaintiff by the computer forensics company in January 2026.

## COUNT FIVE: 42 U.S.C. § 1983 4th AMENDMENT CLAIM

## As against DOE 2–20

58. **Introduction**: Plaintiff repeats and realleges Paragraphs 1–57 hereof, as if fully set forth herein. This is a cause for action under 42 U.S.C. § 1983 for the infringement of Plaintiff's 4th Amendment constitutional right to not be unlawfully detained, under the United States Constitution, by the Defendants. These events began in Menlo Park, California, in October 2023.

59. **Claim 5**: Plaintiff repeats and realleges Paragraphs 23–26 hereof, as if fully set forth herein. The alleged computer software restricted Plaintiff's freedoms, such as his ability to refuse to comply with the direct orders of the Defendants. Plaintiff was unable to choose to work as a means of avoiding participation in the Defendants' investigation because of the software. No formal statement of a suspected crime was ever communicated to Plaintiff, nor was Plaintiff charged with any crime related to the unlawful detainment. The computer software restricted Plaintiff's freedoms from October 2023 through the end of May 2024. Therefore, Plaintiff was unlawfully detained because Plaintiff's freedoms were restricted, without valid legal justifications, for the purpose of complying with the Defendants' orders. In addition, the concealment of evidence related to **Claim 5** hereof, as described in **Count 3** and **Count 4** hereof, is circumstantial evidence of consciousness of guilt.

## COUNT SIX: 42 U.S.C. § 1983 14th AMENDMENT CLAIM

## As against DOE 2–20

60. **Introduction**: Plaintiff repeats and realleges Paragraphs 1–59 hereof, as if fully set forth herein. This is a cause for action under 42 U.S.C. § 1983 for the infringement of Plaintiff's 14th Amendment constitutional right to not be deprived of life, liberty, and property without due process of law, under the United States Constitution, by the Defendants. These events began in Palo Alto, California, and Menlo Park, California, beginning in October 2023.

61. **Claim 6**: After Plaintiff was demoted by his employer, the Defendants instructed Plaintiff to engage in vigorous exercise (usually 6 hours of walking per day), to not eat food, to not drink water, to not urinate, to not defecate, or Plaintiff would incriminate himself for doing any of these actions. Defendants coerced Plaintiff into not buying or eating already purchased

food that may have kept Plaintiff from becoming malnourished for a longer period of time. Plaintiff alleges that his intake of water and food became so poor that he became malnourished due to the amount of exercise he performed compared to his nutrient, water, and vitamin intake and outtake. This went on for several months, and Plaintiff lost a significant amount of weight (2.3 pounds per week; **Exhibit M**). Plaintiff continued to comply with the Defendants' orders. The Defendants showed a deliberate indifference to Plaintiff's medical needs for the following reasons:

62. **Post-surgery medical injuries**: Plaintiff repeats and realleges Paragraph 47–49 hereof, as if fully set forth herein. The Defendants were fully cognizant of Plaintiff's medical condition (**Exhibit M**).

63. **Deliberate indifference to Plaintiff's medical needs by the Defendants, first example**: The Defendants did not tell Plaintiff that it would be okay to take a break from not eating or drinking water and exercising despite Plaintiff's medical condition. The Defendants did not take any sort of precautionary steps that may have been recommended by a doctor due to Plaintiff's known medical history (**Exhibit M**). As described in Paragraph 48 hereof, as if fully set forth herein, Plaintiff developed liver damage, which is commonly observed amongst anorexia nervosa patients, due to the Defendants' deliberate indifference to Plaintiff's medical needs (**Exhibit M**). At no point in time did the Defendants give Plaintiff a break by telling Plaintiff to eat food or stop exercising. In addition, Plaintiff observed a new and unexpected pain in his abdomen after complying with the Defendants' unreasonable orders in April 2024 (**Exhibit M**). Plaintiff's medical diagnoses are still ongoing.

64. **Deliberate indifference to Plaintiff's medical needs by the Defendants, second example**: The Defendants even went as far as having a female police agent mention making an

appointment while Plaintiff was walking outside, such that if Plaintiff did go to the doctor, then Plaintiff would incriminate himself in some manner. The Defendants also made mocking statements like 'Do I have cancer?' to Plaintiff while he was walking outside. The Defendants mocked Plaintiff after he made an audio recording that he was experiencing severe back pain as described in Paragraph 38 hereof, as if fully set forth herein. The design of the Defendants' investigation tactics clearly demonstrates a deliberate indifference to Plaintiff's medical needs.

65. **The Defendants' continuing conduct**: To this day, the Defendants are still trying to subjugate Plaintiff into not eating food, not drinking water, urinating, or defecating. Their indifference to Plaintiff's medical needs has not stopped.

## COUNT SEVEN: 42 U.S.C. § 1983 14th AMENDMENT CLAIM

## As against DOE 2–20

66. **Introduction**: Plaintiff repeats and realleges Paragraphs 1–65 hereof, as if fully set forth herein. This is a cause for action under 42 U.S.C. § 1983 for the infringement of Plaintiff's 14th Amendment constitutional right to not be deprived of life, liberty, and property without due process of law, under the United States Constitution, by the Defendants. The Fourteenth Amendment protects citizens from being subjected to investigation techniques that are defined as cruel and unusual punishment or torture because cruel and unusual punishment or torture techniques infringe upon the fundamental fairness principles of the due process clause. These events began in Menlo Park, California in October 2023 and culminated in inducing psychosis in Plaintiff in February 2024.

67. **Claim 7**: Plaintiff repeats and realleges Paragraphs 42–46 hereof, as if fully set forth herein. Plaintiff alleges that he was subjected to investigation techniques that constitute

*torture*. The investigation, as described Paragraphs 34–41, as if fully set forth herein, was intentionally designed to induce psychological distress in Plaintiff. The Defendants are using every psychological effect at their disposal, including knowingly using techniques that lead to the infliction of psychological distress; the Defendants who designed the investigation are cognizant enough to understand the consequences of their actions because their high ranks in law enforcement are indicative of competence. Plaintiff noticed the torture-induced psychosis in February 2024, and the psychiatric diagnoses and treatment are still ongoing. To the date of this filing, the Defendants have not ceased instructing Plaintiff that engaging in normal human activities will incriminate himself such as eating food, drinking water, urinating, defecating, cleaning, bathing, shopping, listening to music, watching TV, using a computer for entertainment or in other ways, pursuing legal advice and attempting to take legal action, looking in any direction besides straight forward, displaying negative body language, scratching oneself, slouching, sleeping with an incorrect posture, and talking to or interacting with certain people, which is evidence of their continual deliberate indifference to Plaintiff's psychological needs.

68. **Torture by deprivation of food and water, coupled with deprivation of using the bathroom and prolonged exercise**: Prolonged deprivation of food and water is considered a torture technique. As stated in the declassified Central Intelligence Agency KUBARK interrogation manual, under the "coercive," i.e., illegal torture technique section: "For centuries interrogators have employed various methods of inducing physical weakness:...prolonged exertion;...and deprivation or drastic reduction of food..."

69. Using the code language, Defendants directly and repeatedly instructed Plaintiff not to eat food or drink water for prolonged periods of time. In addition, the situation became more severe because the Defendants instructed Plaintiff to engage in prolonged daily exercise

while being deprived of food and water. Using the code language, the Defendants directly instructed Plaintiff to stop urinating and defecating. Psychological distress is observed amongst people who are constipated. Psychological distress is observed amongst people who do not urinate for extended periods of time. The actions by the Defendants, as described in this Paragraph hereof, contributed to Plaintiff's most serious psychological injury. Plaintiff complied with the Defendants' orders until the psychosis that developed because of the Defendants' conduct convinced Plaintiff not to comply with the orders. In addition to the psychological effects, the investigation techniques also caused Plaintiff to experience medical injuries.

70. **Torture by isolation (deprivation of sensory stimuli)**: Isolation is considered a torture technique. As stated in the declassified Central Intelligence Agency KUBARK interrogation manual, under the "coercive," i.e., illegal torture technique section: "Deprivation of sensory stimuli: The chief effect of...solitary confinement, is to deprive the subject of many or most of the sights, sounds, tastes, smells, and tactile sensations to which he has grown accustomed...The symptoms most commonly produced by isolation are...hallucinations and delusions...The results confirmed earlier findings that (1) the deprivation of sensory stimuli induces stress; (2) the stress becomes unbearable for most subjects; (3) the subject has a growing need for physical and social stimuli; and (4) some subjects progressively lose touch with reality, focus inwardly, and produce delusions, hallucinations, and other pathological effects."

71. Using the code language, the Defendants instructed Plaintiff to do nothing else besides sit upright in a chair as perfectly as possible and to look straight forward as perfectly as possible, or Plaintiff would incriminate himself for the entirety of the time Plaintiff was awake and not exercising or doing other essential activities such as eating, drinking, using the bathroom, applying to job postings, etc. This situation is synonymous with prisoners who are

known to have psychotic symptoms manifest due to being in solitary confinement for extended periods of time. In addition, the Defendants used the code language to instruct Plaintiff not to lay back, stand up, flex his muscles in certain ways, or perform any sort of body language that is indicative of negative limbic arousal. For example, Plaintiff was staring at a wall, without moving his eyes to the right, left, up, or down, for hours on end every day for months. Plaintiff developed severe psoriasis, which was evidenced by his medical record on 2/7/2024 **(Exhibit R)**. Psoriasis is a medical condition in which the body's physiological response causes an area of the body to become itchy. Using the code language, the Defendants instructed Plaintiff that if he were to scratch himself, then he would incriminate himself. Itchiness due to psoriasis is controlled by the immune system, which is, to an extent, involuntary. Not being able to scratch yourself when you are very itchy can become unbearable. The actions by the Defendants, as described in this Paragraph hereof, contributed to Plaintiff's most serious psychological injury that was noticed in February 2024.

## COUNT EIGHT: 42 U.S.C. § 1983 14th AMENDMENT CLAIM

## As against DOE 2–20

72. **Introduction**: Plaintiff repeats and realleges Paragraphs 1–71 hereof, as if fully set forth herein. This is a cause for action under 42 U.S.C. § 1983 for the infringement of Plaintiff's 14th Amendment constitutional right to equal protection, under the United States Constitution, by the Defendants. These events happened in Palo Alto, California, beginning in May 2023 through August 2023.

73. **Claim 8**: As described in Paragraphs 19–21 and 29–41 hereof, as if fully set forth herein, Plaintiff alleges that the Defendants colluded with all of Plaintiff's coworkers to harass

and sexually harass Plaintiff in his workplace. The incidents of sexual harassment were inappropriate bodily contact, lewd gestures, inappropriate comments, and inappropriate sounds. Plaintiff was also harassed by his coworkers as they routinely tried to distract him while working, using visual distraction techniques and making noises. Therefore, Plaintiff's work environment was hostile because of the Defendants. The Defendants' discriminatory actions were based on Plaintiff's sexual orientation. There is a causal link between Defendants' actions and Plaintiff's career being ruined.

## COUNT NINE: 42 U.S.C. § 1983 ARTICLE 1 SECTION 7 CLAIM

### As against DOE 2–20

74. **Introduction**: Plaintiff repeats and realleges Paragraphs 1–73 hereof, as if fully set forth herein. This is a cause for action under 42 U.S.C. § 1983 for the infringement of Plaintiff's civil rights, under Article 1 Section 7 of the California State Constitution, by the Defendants.

75. **Claim 9**: Plaintiff repeats and realleges the infringements of Plaintiff's civil rights under the United States Constitution, as analogous infringements under Article 1 Section 7 of the California State Constitution, which are described in the analogous Paragraphs 50–51 (**Count 1**) hereof, as if fully set forth herein.

## COUNT TEN: 42 U.S.C. § 1983 ARTICLE 1 SECTION 7 CLAIM

### As against DOE 2–20

76. **Introduction**: Plaintiff repeats and realleges Paragraphs 1–75 hereof, as if fully set forth herein. This is a cause for action under 42 U.S.C. § 1983 for the infringement of

Plaintiff's civil rights, under Article 1 Section 7 of the California State Constitution, by the Defendants.

77. **Claim 10**: Plaintiff repeats and realleges the infringements of Plaintiff's civil rights under the United States Constitution, as analogous infringements under Article 1 Section 7 of the California State Constitution, which are described in the analogous Paragraphs 52–53 (**Count 2**) hereof, as if fully set forth herein.

## COUNT ELEVEN: 42 U.S.C. § 1983 ARTICLE ONE SECTION SEVEN CLAIM

### As against DOE 2–20

78. **Introduction**: Plaintiff repeats and realleges Paragraphs 1–77 hereof, as if fully set forth herein. This is a cause for action under 42 U.S.C. § 1983 for the infringement of Plaintiff's civil rights, under Article 1 Section 7 of the California State Constitution, by the Defendants.

79. **Claim 11**: Plaintiff repeats and realleges the infringements of Plaintiff's civil rights under the United States Constitution, as analogous infringements under Article 1 Section 7 of the California State Constitution, which are described in the analogous Paragraphs 54–55 (**Count 3**) hereof, as if fully set forth herein.

## COUNT TWELVE: 42 U.S.C. § 1983 ARTICLE ONE SECTION SEVEN CLAIM

### As against DOE 2–20

80. **Introduction**: Plaintiff repeats and realleges Paragraphs 1–79 hereof, as if fully set forth herein. This is a cause for action under 42 U.S.C. § 1983 for the infringement of Plaintiff's civil rights, under Article 1 Section 7 of the California State Constitution, by the Defendants.

81. **Claim 12**: Plaintiff repeats and realleges the infringements of Plaintiff's civil rights under the United States Constitution, as analogous infringements under Article 1 Section 7 of the California State Constitution, which are described in the analogous Paragraphs 56–57 (**Count 4**) hereof, as if fully set forth herein.

## COUNT THIRTEEN: 42 U.S.C. § 1983 ARTICLE 1 SECTION 13 CLAIM

### As against DOE 2–20

82. **Introduction**: Plaintiff repeats and realleges Paragraphs 1–81 hereof, as if fully set forth herein. This is a cause for action under 42 U.S.C. § 1983 for the infringement of Plaintiff's civil rights, under Article 1 Section 13 of the California State Constitution, by the Defendants.

83. **Claim 13**: Plaintiff repeats and realleges the infringements of Plaintiff's civil rights under the United States Constitution, as analogous infringements under Article 1 Section 13 of the California State Constitution, which are described in the analogous Paragraphs 58–59 (**Count 5**) hereof, as if fully set forth herein.

## COUNT FOURTEEN: 42 U.S.C. § 1983 ARTICLE 1 SECTION 7 CLAIM

### As against DOE 2–20

84. **Introduction**: Plaintiff repeats and realleges Paragraphs 1–83 hereof, as if fully set forth herein. This is a cause for action under 42 U.S.C. § 1983 for the infringement of Plaintiff's civil rights, under Article 1 Section 7 of the California State Constitution, by the Defendants.

85. **Claim 14**: Plaintiff repeats and realleges the infringements of Plaintiff's civil rights under the United States Constitution, as analogous infringements under Article 1 Section 7 of the California State Constitution, which are described in the analogous Paragraphs 60–65 (**Count 6**) hereof, as if fully set forth herein.

## COUNT FIFTEEN: 42 U.S.C. § 1983 ARTICLE 1 SECTION 1 CLAIM

### As against DOE 2–20

86. **Introduction**: Plaintiff repeats and realleges Paragraphs 1–85 hereof, as if fully set forth herein. This is a cause for action under 42 U.S.C. § 1983 for the infringement of Plaintiff's civil rights, under Article 1 Section 1 of the California State Constitution, by the Defendants.

87. **Claim 15**: Plaintiff repeats and realleges the infringements of Plaintiff's civil rights under the United States Constitution, as analogous infringements under Article 1 Section 1 of the California State Constitution, which are described in the analogous Paragraphs 60–65 (**Count 6**) hereof, as if fully set forth herein; **Claim 14**, as described in Paragraph 84 hereof, is substantially related to this claim, but the cause for action is distinct.

## COUNT SIXTEEN: 42 U.S.C. § 1983 ARTICLE 1 SECTION 7 CLAIM

## As against DOE 2–20

88. **Introduction**: Plaintiff repeats and realleges Paragraphs 1–87 hereof, as if fully set forth herein. This is a cause for action under 42 U.S.C. § 1983 for the infringement of Plaintiff's civil rights, under Article 1 Section 7 of the California State Constitution, by the Defendants.

89. **Claim 16**: Plaintiff repeats and realleges the infringements of Plaintiff's civil rights under the United States Constitution, as analogous infringements under Article 1 Section 7 of the California State Constitution, which are described in the analogous Paragraphs 66–71 (**Count** 7) hereof, as if fully set forth herein.

## COUNT SEVENTEEN: 42 U.S.C. § 1983 ARTICLE 1 SECTION 1 CLAIM

## As against DOE 2–20

90. **Introduction**: Plaintiff repeats and realleges Paragraphs 1–89 hereof, as if fully set forth herein. This is a cause for action under 42 U.S.C. § 1983 for the infringement of Plaintiff's civil rights, under Article 1 Section 1 of the California State Constitution, by the Defendants.

91. **Claim 17**: Plaintiff repeats and realleges the infringements of Plaintiff's civil rights under the United States Constitution, as analogous infringements under Article One Section One of the California State Constitution, which are described in the analogous Paragraphs 66–71 (**Count 7**) hereof, as if fully set forth herein; **Claim 16**, as described in Paragraph 89 hereof, is substantially related to this claim, but the cause for action is distinct.

## COUNT EIGHTEEN: 42 U.S.C. § 1983 ARTICLE ONE SECTION SEVEN CLAIM

### As against DOE 2–20

92. **Introduction**: Plaintiff repeats and realleges Paragraphs 1–91 hereof, as if fully set forth herein. This is a cause for action under 42 U.S.C. § 1983 for the infringement of Plaintiff's civil rights, under Article 1 Section 7 of the California State Constitution, by the Defendants.

93. **Claim 18**: Plaintiff repeats and realleges the infringements of Plaintiff's civil rights under the United States Constitution, as analogous infringements Article 1 Section 7 of the California State Constitution, which are described in the analogous Paragraphs 72–73 (**Count 8**) hereof, as if fully set forth herein.

## COUNT NINETEEN: 42 U.S.C. § 1983 ARTICLE 1 SECTION 31 CLAIM

### As against DOE 2–20

94. **Introduction**: Plaintiff repeats and realleges Paragraphs 1–93 hereof, as if fully set forth herein. This is a cause for action under 42 U.S.C. § 1983 for the infringement of Plaintiff's civil rights, under Article 1 Section 31 of the California State Constitution, by the Defendants.

95. **Claim 19**: Plaintiff repeats and realleges the infringements of Plaintiff's civil rights under the United States Constitution, as analogous infringements under Article 1 Section 31 of the California State Constitution, which are described in the analogous Paragraphs 72–73

**(Count 8)** hereof, as if fully set forth herein; **Claim 18**, as described in Paragraph 92 hereof, as if fully set forth herein, is substantially related to this claim, but the cause for action is distinct.

## COUNT TWENTY: 42 U.S.C. § 1983 ARTICLE 1 SECTION 1 CLAIM

96. **Introduction**: Plaintiff repeats and realleges Paragraphs 1–95 hereof, as if fully set forth herein. This is a cause for action under 42 U.S.C. § 1983 for the infringement of Plaintiff's civil rights, under Article 1 Section 1 of the California State Constitution, by the Defendants.

97. **Claim 20**: Plaintiff alleges infringements of Plaintiff's civil rights under Article 1 Section 1 of the California State Constitution, which are described in Paragraphs 72–73 **(Count 8)** hereof, as if fully set forth herein. Plaintiff's rights to privacy were infringed because the Defendants caused Plaintiff's coworkers to make fallacious and defamatory statements around Plaintiff that were unrelated to anything that Plaintiff's coworkers had to do with the investigation. In February 2024, Plaintiff's parents were contacted without Plaintiff's consent by people high up on the totem pole from Plaintiff's employer, who said that people were bad mouthing Plaintiff. **Claim 18** and **Claim 19**, as described in Paragraphs 93 and 95 hereof, as if fully set forth herein, are substantially related to this claim, but the causes for actions are distinct.

## COUNT TWENTY-ONE: 42 U.S.C. § 1983 4th AMENDMENT CLAIM

## As against MATTHEW PAGE and DOE 1

98. **Introduction**: Plaintiff repeats and realleges Paragraphs 1–97 hereof, as if fully set forth herein. This is a cause for action under 42 U.S.C. § 1983 for the infringement of

Plaintiff's 4th Amendment constitutional right to not be subjected to warrantless searches, under the United States Constitution, by the Defendants.

99. **Claim 21**: Plaintiff repeats and realleges paragraph 16 hereof, as if fully set forth herein. It is clearly defined under the 4th Amendment that police officers are not allowed to enter the residences of civilians without a warrant that is signed by a judge or by verbal or written permission from a person in the residence. At the time of entry, Plaintiff was the only person in his apartment, and Plaintiff did not give MATTHEW PAGE or DOE 1 permission to enter the apartment. The events described in this Paragraph hereof happened in February 2024.

## COUNT TWENTY-TWO: 42 U.S.C. § 1983 ARTICLE 1 SECTION 13 CLAIM

## As against MATTHEW PAGE and DOE 1

100. **Introduction**: Plaintiff repeats and realleges Paragraphs 1–99 hereof, as if fully set forth herein. This is a cause for action under 42 U.S.C. § 1983 for the infringement of Plaintiff's Article 1 Section 13 constitutional right to not be subjected to warrantless searches, under the California State Constitution, by the Defendants.

101. **Claim 22**: Plaintiff repeats and realleges the infringements of Plaintiff's civil rights under the United States Constitution, as analogous infringements under Article 1 Section 13 of the California State Constitution, which are described in the analogous Paragraph 99 (**Count 21**) hereof, as if fully set forth herein; **Claim 21** is substantially related to this claim, but the cause for action is distinct.

## COUNT TWENTY-THREE: 42 U.S.C. § 1983 5th AMENDMENT CLAIM

## As against MATTHEW PAGE and DOE 1

102. **Introduction**: Plaintiff repeats and realleges Paragraphs 1–101 hereof, as if fully set forth herein. This is a cause for action under 42 U.S.C. § 1983 for the infringement of Plaintiff's 5th Amendment constitutional right to not be compelled to be a witness against himself, under the United States Constitution, by the Defendants.

103. **Claim 23**: Plaintiff repeats and realleges paragraph 16 hereof, as if fully set forth herein. Police officers are not allowed to question suspects who clearly invoke their constitutional rights during out-of-custody questioning if the person being questioned is not free to leave. MATTHEW PAGE continued to question Plaintiff after Plaintiff clearly invoked his "5th Amendment" right not to be compelled to be a witness against himself. Plaintiff was unable to leave the situation because he was in his own residence, and MATTHEW PAGE made a conclusory remark that it was disconcerting that Plaintiff asserted his rights not to be compelled to be a witness against himself. These events happened in February 2024 during the warrantless entry to Plaintiff's apartment.

## COUNT TWENTY-FOUR: 42 U.S.C. § 1983 ARTICLE 1 SECTION 15 CLAIM

## As against MATTHEW PAGE and DOE 1

104. **Introduction**: Plaintiff repeats and realleges Paragraphs 1–103 hereof, as if fully set forth herein. This is a cause for action under 42 U.S.C. § 1983 for the infringement of Plaintiff's Article 1 Section 15 constitutional right to not be compelled to be a witness against himself, under the California State Constitution, by the Defendants.

105. **Claim 24**: Plaintiff repeats and realleges the infringements of Plaintiff's civil rights under the United States Constitution, as analogous infringements under Article 1 Section 15 of the California State Constitution, which are described in the analogous Paragraph 103 (**Count 23**) hereof, as if fully set forth herein; **Claim 23** is substantially related to this claim, but the cause for action is distinct.

## COUNT TWENTY-FIVE: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

### As against DOE 2–20

106. **Introduction**: Plaintiff repeats and realleges Paragraphs 1–105 hereof, as if fully set forth herein. This is an action for the infringement of the common laws of California that define the intentional infliction of emotional distress as a tortious act. Plaintiff alleges that the Defendants intentionally inflicted emotional distress in him.

107. **Claim 25:** There are several criteria that were met that classify the Defendants' actions as meeting the common law standards of the state of California for an intentional infliction of emotional distress claim. First, the Defendants' conduct was outrageous and beyond what's normally acceptable because police do not normally subject people to investigation techniques that are defined as torture, as described in Paragraphs 60–71 hereof (**Count 6–7**), as if fully set forth herein. Second, the Defendants' investigation was by design, intended to push anyone past the point of the infliction of emotional distress. Third, Plaintiff alleges that the Defendants were cognizant of the fact that their wanton investigation would, after some point in time, induce psychological distress, and that the Defendants acted with a reckless disregard to Plaintiff because they never gave Plaintiff a break or told him to cease following their

instructions; it has been known since the 1960's (the declassified CIA KUBARK interrogation manual), that techniques such as the ones described in Paragraphs 60–71 hereof (**Count 6–7**) that were used on Plaintiff, are "coercive," i.e. illegal techniques defined as torture, and they are used for the purpose of inducing psychological distress to make interrogatees more malleable. Fourth, Plaintiff suffered severe and irreversible psychological injuries/emotional distress due to the direct actions of the Defendants. Plaintiff's injuries would never have occurred if it were not for the direct actions of the Defendants.

## COUNT TWENTY-SIX: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM

### As against MATTHEW PAGE and DOE 1–20

108. **Introduction**: Plaintiff repeats and realleges Paragraphs 1–107 hereof, as if fully set forth herein. This is an action for the infringement of the common laws of California that define the negligent infliction of emotional distress as a tortious act. Plaintiff alleges that the Defendants negligently inflicted emotional distress in him.

109. **Claim 26**: There are several criteria that were met that classify the Defendants' actions as meeting the common law standards of the state of California for a negligent infliction of emotional distress claim. First, the Defendants were negligent in that their conduct could cause emotional distress in Plaintiff because they did not take any corrective actions as described in Paragraphs 60–71 hereof (**Count 6–7**), as if fully set forth herein. Second, the Defendants' actions caused Plaintiff's emotional distress. Third, the actions perpetrated against Plaintiff by the Defendants were the major causes of Plaintiff's emotional distress. The unlawful actions of

police agents were the source of Plaintiff's severe and irreversible psychological injuries/emotional distress.

## APPLICABLE LEGAL DOCTRINES

110. **The continuous violation doctrine**: By reason of the continuous nature of the infringements described in Paragraphs 50–108 hereof, as if fully set forth herein, the continuous violation doctrine is applicable to all of the alleged infringements of Plaintiff's civil rights: First, the Defendants followed up their unlawful actions in Plaintiff's workplace, as described in Paragraphs 72–73 hereof (**Count 8**) as if fully set forth herein, by hindering Plaintiff from seeking legal recourse as described in Paragraphs 50–59 hereof (**Counts 1–5**), as if fully set forth herein. Second, the Defendants unlawfully detained Plaintiff as described in Paragraphs 58–59 hereof (**Count 5**), as if fully set forth herein, which continued and furthered the unlawful actions of the Defendants. Third, Plaintiff's medical and psychological injuries, as described in Paragraphs 60–71 hereof (**Counts 6–7**), resulted in the culmination of Plaintiff's most major injuries being observed in February 2024; Plaintiff's medical injuries were observed beginning in February 2024. Fourth, the Defendants intentionally concealed evidence, as described in Paragraphs 56–57 hereof (**Count 4**), as if fully set forth herein, which was noticed at the end of April 2024 and lasted until December 2025. By reason of the foregoing, all of the constitutional rights infringements and tortious acts are related to one another, and they are continuations of the alleged investigation malpractices.

111. **The equitable estoppel doctrine**: Plaintiff is requesting that the court grant relief under the equitable estoppel doctrine because the Defendants' actions satisfy the conditions

required for equitable estoppel. Plaintiff was coerced and hindered from taking timely legal actions due to the Defendants' actions. The conditions that must be met are:

112. **Intent**: As stated in Paragraphs 50–59 hereof (**Counts 1–5**), as if fully set forth herein, the Defendants misled and forced Plaintiff into not taking timely legal action for the following reasons: Some of the Defendants coerced and intimidated Plaintiff into not taking timely legal action. The Defendants promised Plaintiff a legal settlement, which convinced Plaintiff not to take timely legal action. The Defendants unlawfully detained Plaintiff, which prevented Plaintiff from taking timely legal action. The Defendants concealed evidence, which prevented Plaintiff from taking timely legal actions. Therefore, the Defendants intended for Plaintiff not to initiate timely legal actions.

113. **Knowledge of facts**: Plaintiff alleges that the Defendants knew that there would be legal consequences for Plaintiff not talking to lawyers, taking legal action, or learning about the law because they actively tried to stop Plaintiff from exercising his civil rights in these regards as described in Paragraphs 50–57 hereof (**Count 1** and **Counts 3–4**), as if fully set forth herein. The Defendants knew that unlawfully detaining Plaintiff would skew his abilities to take legal actions, as described in Paragraphs 58–59 hereof (**Count 5**), as if fully set forth herein. The Defendants knew that promising someone a legal settlement would probably delay and prevent the opposing party from taking timely legal actions as described in Paragraphs 52–53 hereof (**Count 2**), as if fully set forth herein. The Defendants concealed evidence, and the concealment of evidence is circumstantial evidence of consciousness of guilt for the various **Counts** that are referenced in Paragraph 57 hereof.

114. **Ignorance of truth**: For the reasons referenced in Paragraphs 112–113 hereof, as if fully set forth herein, Plaintiff was unaware of the statutory deadlines that were required to timely file administrative complaints under the California Government Tort Claims Act under the state and common laws of California. Plaintiff was unaware of the statutory deadlines required to timely file a Title VII of the Civil Rights Act of 1964 administrative complaint with the Equal Employment Opportunity Commission. Plaintiff was coerced into not seeking legal advice, which left Plaintiff ignorant, not by his own choosing. The concealment of evidence by the Defendants hindered Plaintiff from being able to adequately present his case to attorneys, which left Plaintiff ignorant, not by his own choosing. Being unlawfully detained made Plaintiff indigent, which contributed to his ignorance of the truth.

115. **Detrimental reliance**: For the reasons referenced in Paragraphs 112–113 hereof, as if fully set forth herein, Plaintiff trusted that the Defendants would not attempt to deceive him to his detriment. The Defendants' concealment of evidence directly interfered with Plaintiff's ability to adequately seek legal advice and take legal actions. It is reasonable to expect that if the Defendants coerced Plaintiff into not taking legal action, and afterwards offered Plaintiff a legal settlement for cooperation in their investigation, that the Defendants would honor their words and actions or rescind their offer. Plaintiff believes that he was mistaken to trust, in good faith, the words and actions of the Defendants. Therefore, because of the Defendants' actions, Plaintiff was ignorant, and Plaintiff did not timely file administrative complaints under the California Government Tort Claims Act under the state and common laws of California, and under Title VII of the Civil Rights Act of 1964.

**WHEREFORE**, Plaintiff requests judgment as follows:

A. On **Counts 1–4**, awarding damages in favor of Plaintiff, in an amount to be determined at trial, but in no event less than $ 1 per count, plus interest, attorneys' fees, and costs. The Defendants are liable for emotional distress damages in an amount to be determined at trial for each count. Plaintiff seeks equitable relief in the form of testimony by the Defendants under oath for each count. Plaintiff seeks declaratory relief that his constitutional rights were violated for each count.

B. On **Count 5** and **Count 13**, awarding damages in favor of Plaintiff, in an amount to be determined at trial, but in no event less than $ 240,000, plus interest, attorneys' fees, and costs. The Defendants are liable for emotional distress damages in an amount to be determined at trial for each count. Plaintiff seeks equitable relief in the form of testimony by the Defendants under oath for each count. Plaintiff seeks declaratory relief that his constitutional rights were violated for each count.

C. On **Count 6**, **Count 14**, and **Count 15**, awarding damages in favor of Plaintiff, in an amount to be determined at trial, the Defendants are liable for an amount of $ 22,213 due to past medical expenses, over the duration of one year, plus interest, attorneys' fees, and costs. The medical diagnoses are ongoing, so a more accurate amount will be determined at trial for each count. By reason of the foregoing, the Defendants are liable for future medical expenses, which will be determined at trial for each count. The Defendants are liable for emotional distress damages in an amount to be determined at trial for each count. Plaintiff seeks equitable relief in the form of testimony by the Defendants under oath for each count. Plaintiff seeks declaratory relief that his constitutional rights were violated for each count.

D. On **Count 7** and **Count 16**, awarding damages in favor of Plaintiff, in an amount to be determined at trial, the Defendants are liable for an amount of $ 33,704 due to past psychiatric expenses, over the duration of one year, plus interest, attorneys' fees, and costs. By reason of the foregoing, the Defendants are liable for future psychiatric expenses, which will be determined at trial for each count. The Defendants are liable for emotional distress damages in an amount to be determined at trial for each count. Plaintiff seeks equitable relief in the form of testimony by the Defendants under oath for each count. Plaintiff seeks declaratory relief that his constitutional rights were violated for each count.

E. On **Count 8**, **Count 18**, and **Count 19**, awarding damages in favor of Plaintiff, in an amount to be determined at trial, but in no event less than $ 2,120,377 for lost earning capacity, plus interest, attorneys' fees, and costs. The Defendants are liable for emotional distress damages in an amount to be determined at trial for each count. Plaintiff seeks equitable relief in the form of testimony by the Defendants under oath for each count. Plaintiff seeks declaratory relief that his constitutional rights were violated for each count.

F. On **Counts 9–12**, **Count 17**, and **Counts 20–24**, awarding damages in favor of Plaintiff, in an amount to be determined at trial, but in no event less than $ 1 per count, plus interest, attorneys' fees, and costs. The Defendants are liable for emotional distress damages in an amount to be determined at trial for each count. Plaintiff seeks equitable relief in the form of testimony by the Defendants under oath for each count. Plaintiff seeks declaratory relief that his constitutional rights were violated for each count.

G. On **Count 25** and **Count 26**, awarding damages in favor of Plaintiff, in an amount to be determined at trial, plus interest, attorneys' fees, and costs. The Defendants are liable for emotional distress damages in an amount to be determined at trial for each count.

H. Granting Plaintiff equitable relief via the application of the equitable estoppel doctrine and the continuing violation doctrine to the statutes of limitations defenses that may be raised.

I. Granting Plaintiff injunctive relief for the Defendants to cease their unconstitutional conduct.

J. Granting Plaintiff such other and further relief as the Court deems just and proper.

Respectfully submitted,

JOHN DOE

Date: 2/2/2026

# VERIFICATION

I, JOHN DOE, being duly sworn, deposes and says that I am the Plaintiff in the case captioned CASE NO. 26-cv-00911-SVK and United States District Court for the Northern District of California, and have authorized the filing of this Complaint. I have reviewed the allegations made in the complaint, and to those allegations of which I have personal knowledge, I believe them to be true. As to those allegations of which I do not have personal knowledge, I rely on the words and actions of the Defendants, and I believe them to be true.

JOHN DOE

Date: 2/2/2026